**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2534-24

IVY HOLDINGS, LLC,

     Plaintiff-Respondent,

v.

KAREEM MUHAMMAD
KANEEF TUCKER,

     Defendant-Appellant,

and

KARIM TUCKER, KARISMAH
TUCKER, KAREEMAH TUCKER,
JACK CORREIA, UNION COUNTY
BOARD OF SOCIAL SERVICES,
LATANIA FOWLER, SHADEERAH
YOUNG, UNION COUNTY
PROBATION SERVICES, NEW
CENTURY FINANCIAL SERVICES,
INC., TRINITAS HOSPITAL,
MIDLAND FUNDING assignee of
FINGERHUNT CREDIT ADV, and
THE STATE OF NEW JERSEY,

     Defendants.

_____

Submitted March 24, 2026 – Decided August 12, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. F-016360-19.

Illya D. Lichtenberg, attorney for appellant.

Anthony L. Velasquez, attorney for respondent.

PER CURIAM

This tax sale certificate foreclosure proceeding comes before us for a third time. Defendant Kareem Muhammad Kaneef Tucker appeals from a March 11, 2025 Chancery Division order vacating the June 29, 2020 final judgment and entering final judgment in favor of plaintiff Ivy Holdings, Inc. (Ivy). We vacate the March 11, 2025 order, reinstate the June 29, 2020 final judgment, and remand for further proceedings to determine whether, and in what amount, defendant is entitled to just compensation for the taking of his interest in real property.

I.

We incorporate by reference the facts and procedural history set forth in our two prior opinions, Ivy Holdings, LLC v. Tucker (Ivy Holdings I), No. A-4639-19 (App. Div. Dec. 21, 2022) (slip op. at 3-9) and Ivy Holdings, LLC v.

2                                                                    A-2534-24

Tucker (Ivy Holdings III), No. A-2076-22 (App. Div. Dec. 24, 2024) (slip op. at 3-11).  We reiterate those facts and events pertinent to the present appeal.

Defendant's father, Kevin L. Tucker (Tucker, Sr.), owned residential real property (the property) in the City of Elizabeth (the City).  Tucker, Sr. did not pay local property taxes assessed on the parcel for tax years 2015 and 2016.

On April 6, 2017, Tucker, Sr. died unmarried and without a will.  He left defendant and his three siblings as his heirs and the owners of the property.  Defendant obtained a twenty-five percent ownership interest in the property on his father's death.  At the time of Tucker, Sr.'s death, the local property taxes on the property were in arrears of $7,293.08.

On June 16, 2017, TWR CST EBURY FUND 1 NJ LLC purchased from the City a tax sale certificate on the property for $9,041.16, plus interest, costs, and a $16,000 premium.  The certificate carried zero percent interest.  After several transfers, some after the complaint in this matter was filed, Ivy obtained title to the certificate.  For ease of reference, we refer to the various holders of the certificate since the initiation of this matter as plaintiff.

On October 1, 2019, the City issued a notice placing the property on its abandoned properties list pursuant to N.J.S.A. 55:19-54 to -60, and the Abandoned Properties Rehabilitation Act (APRA), N.J.S.A. 55:19-78 to -106.

3

The notice was based on the City's finding the property had not been legally occupied for more than six months, taxes were delinquent, and one or more unspecified additional statutory criteria had been met. The notice was issued to Tucker, Sr., who had been deceased for more than two years, and not to the four owners of the property. In addition, the notice was addressed to the property, even though the City contended the parcel had been abandoned. No one filed a challenge pursuant to N.J.S.A. 55:19-55(e) to the City's decision to place the property on the abandoned properties list.

On October 14, 2019, plaintiff filed a complaint in the Chancery Division to foreclose the tax sale certificate. In addition to defendant, plaintiff named defendant's three siblings, his mother, Shadeerah Young, and other creditors as defendants. Young had a nearly twenty-year-old child support judgment recorded against the property. The complaint does not mention the property having been declared abandoned.

All defendants were personally served, except for defendant and Young, who were served by publication. The court set a time, place, and amount of redemption of $47,005.12. When redemption was not made, on June 29, 2020, the court entered final judgment of foreclosure against all defendants, vesting title to the property in plaintiff.

4

On August 12, 2020, defendant and Young moved to vacate the judgment, arguing it was void under Rule 4:50-1(d) for lack of service. They argued service of the complaint was deficient because plaintiff did not make diligent inquiry under Rule 4:4-5(a)(3) before resorting to substituted service by publication.

Young also submitted a certification in support of the motion averring defendant and his siblings provided her power of attorney to sell the property on their behalf. She claimed she secured a contract to sell the property and became aware of the foreclosure for the first time on August 6, 2020, when the attorney representing her in the closing advised her of the final judgment. Young alleged the purchase price in the contract was $185,000, which was sufficient to redeem the tax sale certificate, satisfy all other creditors with liens on the property, and have the remaining funds distributed to Tucker, Sr.'s heirs. Young argued permitting the judgment to stand would provide a windfall to plaintiff and deprive Tucker Sr.'s children of their inheritance.[1]

---

[1] Defendant, as an heir of the owner of the property, had a right to redeem the tax sale certificate. See N.J.S.A. 54:5-54. Young was made a defendant by virtue of her child support judgment, which was a lien on the property. As a judgment creditor, Young had no right of redemption. Caput Mortuum, LLC v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 333 (App. Div. 2004). Young, defendant's siblings, and Tucker Sr.'s creditors are not parties to this appeal.

A-2534-24

The Chancery Division denied the motion. The court found plaintiff had undertaken a diligent inquiry for Young and substitute service of the complaint on her by publication was sound. The court also found Young did not certify the contract for the sale of the property was arms-length, and noted the purchaser did not move to intervene in the foreclosure proceeding. The court made no findings with respect to defendant, but entered an order denying the motion as to him as well. Defendant and Young appealed.

We affirmed the motion court's decision with respect to Young. Ivy Holdings I, slip op. at 13-15. However, with respect to defendant, we relied on our holding in M & D Associates v. Mandara, 366 N.J. Super. 341, 354 (App. Div. 2004), to conclude "because there was substituted service and a substantial disparity between the amount due on the certificate and the value of the property . . . , the Chancery judge was required to give careful scrutiny to plaintiff's affidavit of diligent inquiry and not accept 'cursory inquiries or recitals'" with respect to substitute service on defendant. Id. at 15. In the absence of findings of fact related to plaintiff's diligent inquiry to locate defendant, we vacated the order denying defendant's motion and remanded with instructions to the motion court to reconsider defendant's application pursuant to Rule 4:50-1(d). Id. at 19.

A-2534-24

On February 3, 2023, the first remand court issued an oral decision again denying defendant's motion to vacate the judgment. The court found plaintiff performed a diligent inquiry to locate defendant before resorting to substitute service by publication. As a result, the court issued a February 3, 2023 order denying defendant's motion to vacate the judgment.

Shortly after defendant filed a notice of appeal from the February 3, 2023 order, the Supreme Court issued its decision in Tyler v. Hennepin County, 598 U.S. 631 (2023). In that matter, the Court recognized a Fifth Amendment Takings Clause violation where real property is sold by a government entity to satisfy a tax lien for an amount above that necessary to satisfy the lien and the excess proceeds from the sale are retained by the government entity. Id. at 647.

Defendant thereafter moved for a remand, contending his appeal was "no longer ripe" because he was entitled to just compensation under Tyler given the value of the property exceeded the amount necessary to satisfy plaintiff's tax sale certificate. Ivy Holdings, LLC v. Tucker (Ivy Holdings II), No. A-2076-22 (App. Div. Sep. 7, 2023) (slip op. at 2). Defendant argued whether he was properly served with the foreclosure complaint was no longer at issue. Ibid.

Plaintiff opposed the motion, arguing defendant did not: (1) raise a takings claim before the opinion in Tyler was issued; (2) produce evidence of

7

the value of the property; or (3) establish he was ready, willing, and able to redeem the tax lien. In addition, plaintiff argued Tyler was inapplicable because it concerned a government entity's foreclosure on a tax lien and this matter concerned a private lien holder's foreclosure on a tax sale certificate.

On September 7, 2023, we denied defendant's motion without prejudice, in "the interests of the parties and judicial economy." Ibid. We concluded whether the final judgment was properly entered against defendant "may be critical to the analysis of plaintiff's argument that the holding in Tyler does not apply to [defendant]'s takings claim and to the question of when a taking, if any, occurred." Ibid.

On December 4, 2023, we issued our opinion in 257-261 20th Avenue Realty, LLC v. Roberto (Roberto I), 477 N.J. Super. 339, 366 (App. Div. 2023), aff'd as modified, 259 N.J. 417 (2025). We held Tyler applies to the Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137, a third-party foreclosure on a tax sale certificate issued by a municipality depriving a property owner of equity in the property beyond what is necessary to satisfy the certificate constitutes a taking under the Fifth Amendment, and the holding in Tyler is to be accorded pipeline retroactivity. Ibid. We also held relief under Rule 4:50-1(f) from a tax sale certificate foreclosure judgment, where the property has not been sold, is

A-2534-24

appropriate where a property owner makes a timely application to vacate the judgment accompanied by a credible proffer to timely redeem the certificate to avoid a deprivation of significant excess equity in the property. Id. at 368-69.

On July 10, 2024, then-Governor Murphy signed L. 2024, c. 39 (Chapter 39), in which the Legislature amended provisions of the TSL to bring the statute into compliance with Tyler. A. Appropriations Comm. Statement to A. 3772 at 1 (June 24, 2024). The amendments revised the TSL to give the owner of a property subject to a tax sale certificate foreclosure proceeding, or the owner's heirs, a right to demand in writing to the court, prior to entry of final judgment, the lien holder foreclose in the same manner as a mortgage holder: by a judicial sale or Internet auction of the property through the office of the county sheriff. L. 2024, c. 39, § 3, amending N.J.S.A. 54:5-87(b). In those instances, the county sheriff shall deposit with the clerk of the court any surplus funds from the sale after the tax sale certificate holder has been paid the redemption amount, costs, and attorney's fees as provided in the judgment. Ibid. The exclusive method through which the owner, or the owner's heirs, may assert a claim for surplus equity in the foreclosure proceeding is by motion pursuant to N.J.S.A. 2A:50-37. Ibid.

In the absence of a timely demand for a judicial sale or Internet auction, the tax lien holder may foreclose without judicial sale or Internet auction and the owner of the property, and the owner's heirs, have no claim to the excess equity in the property. Ibid. For properties that meet the definition of abandoned property as set forth in the APRA, either at the time of the tax sale or thereafter, no judicial sale or Internet auction is required and the court is authorized to bar any claims to surplus equity as part of the foreclosure action. L. 2024, c. 39, §3, amending N.J.S.A. 54:5-87(a).

The amendments "shall take effect immediately, and shall apply to any tax lien for which the right of redemption has not been foreclosed as of the effective date of this act." L. 2024, c. 39, § 11. In addition, the amendments "shall have no effect on any foreclosure action in which a final judgment has been entered prior to the effective date of this act." Ibid.

In supplemental briefing filed with us after enactment of Chapter 39, plaintiff raised two arguments: (1) "a tax foreclosure upon abandoned property is not afforded the same rights of a sheriff sale procedure[;]" and (2) the new legislation is not applicable because final judgment was entered in this matter prior to July 10, 2024.

In his responding supplemental briefing, defendant countered: (1) the City wrongfully determined the property was abandoned; (2) the APRA is prima facie unconstitutional under Tyler; (3) N.J.S.A. 54:5-86 and -87, as revised by Chapter 39, apply only to future cases; and (4) N.J.S.A. 54:5-86 violates the Eighth Amendment Excessive Fines Clause.

On December 24, 2024, we affirmed the first remand court's decision finding plaintiff made a diligent inquiry prior to resorting to substitute service by publication on defendant. Ivy Holdings III, slip op. at 12-13. With respect to "the parties' dueling arguments under Tyler and our state's legislative action that followed[,]" we remanded to the Chancery Division, for the reasons we stated in Ivy Holdings II. Id. at 13-14. We stated:

> We leave to the Chancery Division . . . when the taking, if any, took place, whether [defendant] has established that the subject property had at the time of the taking a fair market value in excess of the amount necessary to redeem the tax lien, including whatever costs are permitted by statute and legal precedents, and whether the City . . . , which we presume, without deciding, is the entity that would be responsible to provide just compensation in the event of a taking, should be added as a party to the Chancery Division action.
>
> [Ibid.]

On January 9, 2025, the Supreme Court issued its opinion in 257-261 20th Avenue Realty, LLC v. Roberto (Roberto II), 259 N.J. 417 (2025). Relying on

the holding in <u>Tyler</u>, the Court affirmed our decision holding the TSL in effect prior to the enactment of Chapter 39 violates the Takings Clause of the Fifth Amendment to the extent it allows for the forfeiture of excess equity without just compensation. <u>Id.</u> at 448. The Court explained:

> The Takings Clause, by its very terms, is designed to prevent the taking of "private property . . . for public use, without just compensation." <u>U.S. Const.</u> amend. V. As a result, lienholders are entitled to recover debts they are owed – the value of tax sales certificates they purchased at public auction along with interest and related costs. But they are not entitled to surplus equity in property that exceeds that amount. To the extent the prior version of the TSL deviates from those principles, it does not survive constitutional scrutiny. Property owners challenging a tax foreclosure on direct review therefore have a plausible claim for the value of property taken from them beyond the debt they owe.
>
> [<u>Ibid.</u> (alteration in original).][2]

On March 11, 2025, the second remand court issued a written decision concluding, under <u>Tyler</u> and <u>Roberto II</u>, defendant raised a plausible claim plaintiff obtained ownership of equity in the property in excess of the amount needed to satisfy the tax sale certificate, constituting a Fifth Amendment taking. Relying on a certification of counsel the property had an "estimated value" of

---

[2] The Court did not decide whether relief under <u>Rule</u> 4:50-1(f) was warranted. <u>Id.</u> at 437. Nor did the Court decide if the State Constitution provides greater protection to property owners than does the Fifth Amendment. <u>Id.</u> at 448-49.

A-2534-24

$300,000 when the final judgment was entered, the court determined plaintiff obtained equity in the property beyond the estimated $47,000 necessary to satisfy the tax lien. The court noted plaintiff's counsel conceded there was at least some surplus equity in the property at the time the final judgment was entered.

The court rejected plaintiff's argument the exception in Chapter 39 for claims of excess equity for property meeting the definition of abandoned property applies here. The court found the plain language of L. 2024, c. 39, § 11 provides Chapter 39, including the abandoned property exception, does not apply to the June 29, 2020 final judgment, which was entered prior to the effective date of the new legislation. In addition, the court found Roberto II did not create an exception from its holding for abandoned property.

Turning to the validity of the City's abandonment determination, the court noted defendant raised two arguments: (1) unpaid taxes cannot be the basis for abandonment under the APRA; and (2) to the extent the APRA allows otherwise, it is prima facie unconstitutional under Tyler. The court found defendant misinterpreted dicta in Tyler discussing Minnesota's abandonment statute. 598 U.S. at 646-47. The remand court noted the Court's discussion illustrated the proposition that failure to pay taxes alone is generally insufficient to constitute

A-2534-24

abandonment of real property. See 598 U.S. at 647 ("'It is the owner's failure to make any use of the property' – and for a lengthy period of time – 'that causes the lapse of the property right.'") (quoting Texaco, Inc. v. Short, 454 U.S. 516, 530 (1982)).

In addition, the court noted N.J.S.A. 55:19-81 requires, for a finding of abandonment, both that a property not be legally occupied for six months and one of four statutory criteria, including delinquent taxes, are met. N.J.S.A. 55:19-81 (a) to (d). Thus, the court concluded the APRA does not permit an abandonment determination based solely on unpaid taxes.

The court also concluded the City's determination the property was abandoned "was not in error." The court found the City relied on the undisputed fact the property was not occupied for more than six months and the property owner's failure to pay taxes. In addition, the court found the City determined the property was in need of rehabilitation and was a public nuisance. The court rejected defendant's argument those criteria for abandonment were merely listed in the City's notice of its determination, along with other statutory criteria, without the City producing evidence establishing any of the criteria.

The court determined, because the June 29, 2020 judgment constituted a taking of defendant's twenty-five-percent interest in the excess equity, the

judgment must be vacated. The court then found: "Now that this [c]ourt has vacated the final judgment, this [c]ourt must apply Chapter 39 in analyzing whether [p]laintiff is entitled to a new final judgment, as Section 11 applies Chapter 39 to tax foreclosures without a final judgment."

Applying the 2024 amendments to N.J.S.A. 54:5-87(a) exempting abandoned properties from the right of an owner or heir to demand a judicial sale or Internet auction, the court found defendant was barred from claiming surplus equity in the property. The court rejected defendant's argument APRA and the bar to claiming surplus equity in abandoned property constituted an excessive fine under the Eighth Amendment. The court found the bar was not a penalty imposed on defendant but related to the property, which had been abandoned and was in need of rehabilitation.

A March 11, 2025 order memorialized the second remand court's decision: (1) vacating the June 29, 2020 final judgment; and (2) granting final judgment foreclosing defendant from redeeming the tax sale certificate and barring his takings claim. This appeal followed.

Defendant argues the second remand court erred because: (1) it did not comply with our mandate, which was limited to determining whether the June 29, 2020 judgment effectuated a taking, and, if so, setting the amount of

compensation to which defendant is entitled, and identifying the party responsible for providing the compensation; (2) it considered whether the property was properly deemed abandoned and applied Chapter 39 to conclude an abandonment precluded defendant's claim to excess equity in the property when plaintiff did not allege abandonment in the complaint; (3) it considered the validity of the City's abandonment determination without a sufficient record; (4) the City's abandonment finding is unconstitutional and constitutes a Fifth Amendment taking; (5) the property is ineligible for the abandoned property list by virtue of N.J.S.A. 55:19-83; and (6) the taking of defendant's interest in the excess equity in property was an excessive fine in violation of the Eighth Amendment.

II.

Having reviewed the record, we conclude the second remand court, after initially following our remand instructions when it determined the June 29, 2020 final judgment was a taking of defendant's interest in the excess equity in the property, departed from our mandate when it vacated the judgment, decided in the absence of an evidentiary record the City appropriately declared the property abandoned, and applied Chapter 39 to render a final judgment precluding defendant's claim to excess equity. Justice Brennan long ago expressed the well-

16

established principle that a trial court "is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written." Flanigan v. McFeely, 20 N.J. 414, 420 (1956) (citing In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954); Hellstern v. Smelowitz, 17 N.J. Super. 366, 371 (App. Div. 1952); McGarry v. Cent. R.R. Co. of N.J., 107 N.J.L. 382 (E. & A. 1931); Jewett v. Dringer, 31 N.J. Eq. 586 (Ch. 1879)); see also Park Crest Cleaners, LLC v. A Plus Cleaners & Alterations Corp., 458 N.J. Super. 465, 472 (App. Div. 2019).

Our remand instruction was clear:

> We leave to the Chancery Division . . . when the taking, if any, took place, whether [defendant] has established that the subject property had at the time of the taking a fair market value in excess of the amount necessary to redeem the tax lien, including whatever costs are permitted by statute and legal precedents, and whether the City . . . , which we presume, without deciding, is the entity that would be responsible to provide just compensation in the event of a taking, should be added as a party to the Chancery Division action.

We agree with the second remand court's conclusion, in light of the holding in Roberto II, the June 29, 2020 final judgment constituted a taking in violation of the Fifth Amendment to the extent it deprived defendant of his share of the equity in the property in excess of the amount needed to redeem plaintiff's tax sale certification. The holding in Tyler is accorded pipeline retroactive

17

application to all tax sale certificate foreclosure matters on direct appeal when the opinion was issued. Roberto II, 259 N.J. at 441-42. Plaintiff's argument this matter was not on direct appeal when Tyler was issued is unconvincing. Roberto II arose in the context of a motion under Rule 4:50-1(f) to vacate a default foreclosure judgment in favor of the holder of a tax sale certificate. Id. at 427. Although a trial court vacated the judgment in Roberto II, ibid., and the first remand court denied the motion to vacate here, we do not view that distinction as significant for the retroactivity analysis. In both instances, the validity of a final judgment of foreclosure on a tax sale certificate was before an appellate court when Tyler was issued.

We do not agree with the remand court's conclusion the appropriate remedy for the taking was to vacate the June 29, 2020 judgment. In Roberto II, the Court did not hold that a judgment of foreclosure effectuating a taking must be vacated. Instead, the Court held where there has been a taking, "lienholders are entitled to recover debts they are owed – the value of tax sales certificates they purchased at public auction along with interest and related costs." Id. at 448. In addition, "[p]roperty owners challenging a tax foreclosure on direct review therefore have a plausible claim for the value of property taken from them beyond the debt they owe." Ibid.

18

Unlike the property owner in Roberto II, defendant did not post sufficient funds to redeem the lien and made no claim he would lose a significant investment of capital were he to lose title to the property. See Id. at 429. By the time the matter was before the second remand court, defendant sought only to be compensated for the taking of his twenty-five percent interest in any equity above that necessary to satisfy plaintiff's tax sale certificate. In addition, defendant's three siblings did not challenge the June 29, 2020 judgment against them. Depriving plaintiff of title to the property obtained through the then-existing TSL, when only one of the three owners of the property asks to be made whole for the taking of his partial interest in the excess equity, is inequitable.

The more equitable remedy is to leave the June 29, 2020 judgment in place while providing defendant with compensation for the value of his twenty-five percent interest in the excess equity. This could be accomplished by determining the fair market value of the property at the time of the taking through evidentiary submissions, deducting from that value the amount necessary to satisfy the certificate and reimburse plaintiff for authorized costs and interest at the time of the taking, and dividing the remainder by four to determine defendant's twenty-five percent interest in the excess equity. To the extent the second remand court determined the value of the property based on a

certification from counsel, a copy of which was not submitted to the court, we vacate that aspect of the court's decision. A determination of the fair market value of real property generally requires expert testimony based on one of "three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001).[3]

We agree with the remand court and plaintiff that defendant's claim to excess equity will be affected, if not precluded, if he abandoned the property by the time the June 29, 2020 judgment was entered. However, the second remand court's conclusion defendant abandoned the property prior to entry of the judgment was flawed in several respects. We therefore vacate that aspect of the court's decision.

As a threshold matter, the court incorrectly applied Chapter 39 to determine if defendant had abandoned the property and, as a result, was precluded from claiming a taking. Chapter 39, however, expressly states it:

---

[3] We do not exclude the possibility of plaintiff selling the property. In that instance, the Fifth Amendment would not be offended if the sale price served as the baseline for measuring just compensation, as least when the sale is fairly conducted in light of the country's history of tax sales. Pung v. Isabella Cnty., Mich., __ U.S. __ (June 23, 2026).

A-2534-24

"shall apply to any tax lien for which the right of redemption has not been foreclosed as of the effective date of this act. This act shall have no effect on any foreclosure action in which a final judgment has been entered prior to the effective date of this act." L. 2024, c. 39, § 11.

"In construing the meaning of a statute . . . , our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013). To interpret a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[W]e begin by looking at the statute's plain language," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and give the language "its ordinary meaning and . . . construe[ it] in a common-sense manner," State in re K.O., 217 N.J. 83, 91 (2014). "We will 'neither rewrite a plainly[] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

A final judgment of foreclosure was entered in this matter prior to enactment of Chapter 39. The statutory amendments in Chapter 39, including the provisions concerning a property owner's ability to claim excess equity in

21

abandoned property, do not apply to this matter. On remand, the court shall apply the law as it existed prior to enactment of Chapter 39 to determine if defendant abandoned the property before entry of the final judgment and whether such an abandonment precludes his claim to the property's excess equity.

In addition, an abandonment determination must include a finding the City complied with the APRA when it listed the parcel on the abandoned property list. The remand court did not address concerning aspects of the City's declaration. N.J.S.A. 55:19-83(a), which was enacted decades before Chapter 39, provides:

> If an entity other than the municipality has purchased . . . a tax sale certificate on a property that has not been legally occupied for a period of six months, that property shall not be placed on the abandoned property list pursuant to [N.J.S.A. 55:19-55] if (1) the owner of the certificate has continued to pay all municipal taxes and liens on the property in the tax year when due; and (2) the owner of the certificate takes action to initiate foreclosure proceedings within six months after the property is eligible for foreclosure pursuant to [N.J.S.A. 54:5-86(a) or (b)], as appropriate, and diligently pursues foreclosure proceedings in a timely fashion thereafter.

The record establishes plaintiff held the tax sale certificate and timely paid all municipal taxes on the property up to the time the City declared it abandoned.

22

In addition, plaintiff filed its foreclosure complaint within six months after the property became eligible for foreclosure. Plaintiff's tax sale certificate became eligible for foreclosure two years after the sale to plaintiff. N.J.S.A. 54:5-86(a). Plaintiff purchased the certificate on June 16, 2017. The certificate became eligible for foreclosure on June 16, 2019. Plaintiff filed its foreclosure complaint on October 14, 2019, within six months of June 16, 2019. It is undisputed plaintiff diligently pursued foreclosure proceedings in a timely fashion after filing the complaint. In light of these observations, the remand court shall determine whether N.J.S.A. 55:19-83(a) precluded the City from putting the property on the abandoned property list.

The City's abandonment declaration also raised due process concerns. The City's abandonment notice was addressed to Tucker, Sr., who died two and a half years earlier, not to his estate or the four heirs who inherited the property in 2017, and was sent to the purportedly abandoned property. In addition, the notice stated the property was not legally occupied for more than six months and "any one (or more) of the following criteria exist with regard to the property . . . . " The letter then stated at least one installment of property tax remains unpaid and delinquent as of the date of the determination, followed by seven criteria. The letter did not designate which of the seven criteria the City relied

23

on for its abandonment determination. Moreover, although the notice stated the abandonment finding was made pursuant to N.J.S.A. 55:19-81, that statute contains only four criteria on which an abandonment determination can be made. The source and statutory authority for the three additional criteria is not referenced. If the remand court finds N.J.S.A. 55:19-83(a) did not preclude the City from putting the property on the abandoned property list, it shall identify the statutory basis, if any, for the three additional criteria in the City's notice, which of the criteria were the basis of the City's abandonment finding, and whether the City can establish those criteria existed at the time the finding was made.[4]

Moreover, as noted above, it appears plaintiff paid all taxes on the property after obtaining the tax sale certificate. If true, the City's reliance on delinquent taxes as a basis for its abandonment determination would be invalid. The remand court shall ascertain the status of the taxes on the property at the time the abandonment notice was issued and, if the taxes were current because of plaintiff's payments, whether the statutory foundation for an abandonment determination was met. In addition, given the absence in the City's notice of

---

[4]  The second remand court found the City's abandonment notice listed delinquent taxes and two additional criteria. It is not clear why the court excluded the remaining five criteria in the abandonment notice.

A-2534-24

which of the seven criteria it believed supported its abandonment determination, the remand court shall decide if the City's determination letter provided sufficient notice of the basis for its abandonment determination to satisfy due process concerns.

The remand court shall also consider whether the City's abandonment determination, if upheld, constitutes a Fifth Amendment taking. The Supreme Court has held a failure to comply with "reasonable conditions" on property ownership, which results in an abandonment of that property, does not constitute a Fifth Amendment taking. Texaco, 454 U.S. at 526. However, "[i]t is the owner's failure to make any use of the property' – and for a lengthy period of time – 'that causes the lapse of the property right.'" Tyler, 598 U.S. at 647 (quoting Texaco, 454 U.S. at 530). Defendant acquired his interest in the property on April 6, 2017, when his father died. The City issued the abandoned determination on October 1, 2019. The appropriate period of inquiry to determine the constitutionality of the abandonment determination is the two-and-a-half-year period defendant had an interest in the property, not the years of Tucker, Sr.'s ownership of the parcel.

In the event the remand court finds defendant suffered a taking and is entitled to compensation, the court shall determine whether plaintiff, the City,

or both, is responsible for providing the compensation. To reach this determination, it may be necessary to join the City as a party. See R. 4:28-1(a). In addition, the remand court shall decide defendant's Eighth Amendment claim in the event it determines he abandoned his interest in the property.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-2534-24